IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Daphne Stubbs Redding                )<br>                                                       )<br>                    Plaintiff,          )<br>                                                       )<br>        vs.                                       )<br>                                                       )<br>Trooper D.P. Boulware, Deputy B.A. Hill,  )<br>Lexington County Sheriff's Department   )<br>and South Carolina Highway Patrol,     )<br>                                                       )<br>                    Defendants.       )<br>_____) | C/A No. 0:09-1357-HFF-PJG<br><br><br><br>**REPORT AND RECOMMENDATION** |

The plaintiff, Daphne S. Redding, filed this excessive force case against the defendants. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the motions for summary judgment filed by Defendant Lexington County Sheriff's Department (ECF No. 50), Defendant Hill (ECF Nos. 51, 52), and Defendants Boulware and South Carolina Highway Patrol (ECF No. 56). Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motions should be granted.[1]

---

[1] The court observes that plaintiff's counsel requested oral argument with regard to the pending motions. Although the assigned magistrate judge did not find oral argument to be necessary to resolve the instant motions, the court notes counsel's request for the assigned district judge's information.



**BACKGROUND**

The following facts, which are either undisputed or are viewed in the light most favorable to Redding, appear to be relevant to resolution of the pending motions.[2] On May 28, 2007 at approximately 3:45 a.m., Trooper Boulware attempted to conduct a traffic stop of a vehicle driven by Redding, aged sixty-seven,[3] that he perceived to be driving below the minimum interstate speed limit. Redding exited the interstate and turned down Jamil Road toward the apartment complex where she lived. Boulware followed her and activated his blue light. Redding did not stop or signal her intention to stop in any way. She proceeded approximately a half mile farther to the parking lot of her apartment complex, where she began to repeatedly sound her vehicle's horn and flash its lights. Boulware used the public address system in his squad car to warn her to stop and turned his searchlight on Redding's vehicle. Redding exited her vehicle. Boulware approached Redding's vehicle and asked to see her identification and instructed her to get back into her car. Rather than complying, Redding pulled out her cell phone to call her husband. Boulware attempted to take her cell phone from her, at which point Redding pushed past Boulware and began to walk away, yelling for her husband. A tussle ensued. Boulware informed Redding that she was under arrest and attempted to place handcuffs on her. Redding yelled "No" to Boulware, continuing to resist and pull away from Boulware. After struggling for some moments during which time Boulware succeeded

---

[2] The plaintiff submitted Trooper Boulware's squad car video from the incident at issue. (See Note, ECF No. 62.) Although the audio component captures most of the incident, a critical portion of the events takes place outside the full visual scope of the camera.

[3] Throughout the record Redding's counsel characterizes her as a "little old lady." The court notes, however, that the record indicates that Redding was 5 feet 6 inches tall and weighed approximately 190 pounds (Arrest Warrant Affidavit, ECF No. 63-3 at 21), compared with Boulware's 5 feet 10 inches and approximately 175 pounds (Boulware Dep., ECF No. 63-2 at 31).



in securing one of Redding's hands in his handcuffs, Boulware and Redding ended up on the ground and Boulware straddled Redding with one leg on either side to restrain her. He did not place his knee in her back or strike her. Redding continued to struggle against being fully handcuffed. Having reached a stalemate with Redding, Boulware called the dispatch officer for backup assistance, maintaining the status quo for at least six minutes until Deputy Hill of the Lexington County Sheriff's Department arrived. In the interim Redding continued to resist against Boulware, repeatedly calling out for "David" or "Jim."[4]

When Deputy Hill arrived, Boulware stated to him that "I'm just trying to do what I can without hurting her . . . [h]urting her any worse." (Tr. of May 28, 2007 Traffic Stop at 9:15-19, ECF No. 52-3 at 8 & accompanying video at 4:20:53.) Hill told Redding at least six times to put her hands behind her back. Redding did not do so. As he attempted to force her second arm into the handcuffs, Hill warned Redding that she was going to cause him to break her arm. Still meeting resistance from Redding, Hill at some point forced Redding's other hand into the handcuffs; during his struggle with Redding, Hill heard "a pop." (Hill Dep. at 27:5-6, ECF No. 63-2 at 44.) Once Redding was restrained, emergency medical personnel were called to the scene to tend to Redding's and Boulware's injuries. It was later determined that Redding's arm was broken and Boulware's fifth digit on his hand (his pinky finger) was dislocated. Redding's injury required surgery and has been determined to be permanent. In their depositions, both officers testified that even though Redding was resisting arrest, they did not perceive during the incident that Redding posed a threat to their safety.

---

[4] David is Redding's husband and Jim is their neighbor.

**DISCUSSION**

A.      **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.  The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.



B.   **Official Capacity Claims**

Defendants South Carolina Highway Patrol, Lexington County Sheriff's Department, and the two law enforcement officers in their official capacities are all immune from suit.[5]  The South Carolina Highway Patrol, as an instrumentality of a state agency, and Defendant Boulware, in his official capacity, are not "persons" under § 1983 and are immune from suit.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989); see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted); S.C. Code Ann. § 1-30-10(A) (establishing Department of Public Safety as an executive branch agency of the government of South Carolina); S.C. Code Ann. §§ 1-30-90(B), 23-6-20(A)  (recognizing the South Carolina Highway Patrol as a division of the Department of Public Safety).  Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court.  See S.C. Code Ann. § 15-78-20(e); see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

Similarly, under South Carolina law, a sheriff is a state official; as an arm of the state, he is not a "person" within the meaning of 42 U.S.C. § 1983 and is immune from suit under the Eleventh Amendment to the United States Constitution.  See Gulledge v. Smart, 691 F. Supp. 947, 954

---

[5] The court observes that in Redding's opposition memorandum to the defendants' motions, she makes no argument countering the showings of Defendants South Carolina Highway Patrol and Lexington County Sheriff's Department that they are entitled to summary judgment on the § 1983 claims.

(D.S.C. 1988) (holding that both sheriffs and deputy sheriffs are agents of the State and immune from suit); Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992) (stating that the sheriff and his employees are state officials). Thus, the Lexington County Sheriff's Department and Deputy Hill in his official capacity are immune from suit. See Smith v. Olanta Police Dep't, C/A No. 4:10-cv-02704-RBH, 2011 WL 780454, at *2 (D.S.C. Feb. 28, 2011) (holding that sheriff's departments are immune from suit under the Eleventh Amendment). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). With regard to Redding's allegations that Deputy Hill acted pursuant to a policy or custom, the court notes that Redding has failed to name a defendant for which liability could attach for such a claim. Cf. Monell, 436 U.S. 658.

C.	Individual Capacity Claims

   1.	**Excessive Force**

This case presents the question of how much force may be constitutionally used by law enforcement officers to effect an arrest for a minor offense when a suspect is resisting but otherwise poses no safety threat. A claim that a law enforcement officer has used excessive force during an arrest, investigatory stop, or other seizure of a person is properly analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution. Graham v. Connor, 490 U.S. 386, 395 (1989); Yarborough v. Montgomery, 554 F. Supp. 2d 611, 617 (D.S.C. 2008). The Fourth Amendment test is an objective one; however, it is not capable of precise definition or mechanical application. Graham, 490 U.S. at 396-97; Yarborough, 554 F. Supp. 2d at 617. It requires the court to determine "whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham,



490 U.S. at 397; Yarborough, 554 F. Supp. 2d at 617.  The court must balance " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the importance of the governmental interest alleged to justify the intrusion."  Yarborough, 554 F. Supp. 2d at 617 (quoting Graham, 490 U.S. at 396).  The test recognizes that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham, 490 U.S. at 396; Yarborough, 554 F. Supp. 2d at 617.

Application of this standard "requires careful attention to the facts and circumstances of each particular case."  Graham, 490 U.S. at 396; Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003).  Some of the facts and circumstances to be considered include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, and the extent of the suspect's injury from the force exerted.  See Jones, 325 F.3d at 527 (citing Graham, 490 U.S. at 396 and Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994)).  The court must determine whether the totality of the circumstances justifies a particular sort of seizure.  Jones 325 F.3d at 527-28 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)); see also Rowland, 41 F.3d at 173 (stating that courts must view the evidence "in full context, with an eye toward the proportionality of the force in light of all the circumstances").  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396.

### 2. Qualified Immunity

Both Trooper Boulware and Deputy Hill assert the defense of qualified immunity.  Qualified immunity shields governmental officials performing discretionary functions from liability for

damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 818, 821; see also Camreta v. Greene, 131 S. Ct. 2020 (2011) (discussing the factors the court should consider in determining whether to address both prongs of the test).

**Trooper Boulware**. Under the facts presented, the court finds, under the totality of the circumstances, that Trooper Boulware's use of force was not objectively unreasonable. The undisputed evidence shows that Trooper Boulware reasonably perceived that Redding was attempting to evade arrest and leave the scene, and that she persistently struggled against Trooper Boulware when he tried to arrest and restrain her. At no time did she cooperate or follow his instructions.[6] Based on the totality of the circumstances as reasonably perceived by Trooper Boulware, the use of force that involved taking Redding to the ground and straddling her to keep her

---

[6] Although Redding has submitted evidence that she was afraid that Boulware was an imposter, it is Trooper Boulware's reasonable perceptions that determine the reasonableness of the force exerted.



from leaving the scene was not objectively unreasonable. Moreover, once he reached a stalemate with Redding, Trooper Boulware called for assistance rather than exert additional force.

Moreover, even if such force could be considered excessive under the circumstances, Trooper Boulware is entitled to qualified immunity. The parties have not identified, and this court has not found, any controlling law of the United States Supreme Court, the Fourth Circuit, or South Carolina's appellate courts, nor pointed to any consensus of persuasive authority, which clearly establishes the right of a resisting suspect—even one stopped for a minor traffic offense—not to be taken to the ground while they were resisting arrest or straddled to keep them from fleeing. Cf. Graham, 490 U.S. at 396 (stating that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); Owens ex rel. Owens v. Lott, 372 F.3d 267, 279-80 (4th Cir. 2004) (describing authority that can yield a determination that a right is clearly established).

Based on the law established at the time of this incident, a reasonable officer would not have known that such measures would constitute excessive force under the Fourth Amendment.[7] Accordingly, Trooper Boulware is entitled to qualified immunity with regard to Redding's claim. Cf. Young v. Prince George's Cnty., 355 F.3d 751, 757-58 (4th Cir. 2004) (holding that the force

---

[7] Plaintiff's counsel emphasizes that Trooper Boulware was antagonistic toward Redding from the beginning of the traffic stop and that he was subsequently counseled by the Highway Patrol concerning his initial greeting towards Redding, which was deemed "less than professional." (S.C. Highway Patrol Use of Force Finding Memorandum, ECF No. 63-3 at 19.) While the court observes that Trooper Boulware's conduct was not necessarily that of a model officer, the Constitution does not guard against rudeness and unprofessionalism. See, e.g., Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir. 1999) ("[A]lthough [the plaintiff] alleges that individual officers insulted her with racial epithets, such undeniably deplorable and unprofessional behavior does not by itself rise to the level of a constitutional violation."); Karadi v. Jenkins, 7 Fed. Appx. 185, 195 (4th Cir. Apr. 3, 2001) (holding that the use of insulting profanity in the course of the detention, while "undeniably deplorable and unprofessional behavior," does not rise to the level of a constitutional violation).



used by the officer after the suspect was handcuffed was not reasonable where the suspect "was stopped for a minor traffic violation, was completely cooperative and posed little, if no, threat once he was handcuffed behind his back"); Clem v. Corbeau, 284 F.3d 543, 552-54 (4th Cir. 2002) (holding that deadly force was not reasonable where a reasonable officer "would have perceived Clem to be unarmed, blinded, and stumbling, in no condition to pose any threat to the officer"); Cowles v. Peterson, 344 F. Supp. 2d 472, 483, 484 (E.D. Va. 2004) (holding that no objectively reasonable officer could believe that "when an individual objects to a search of his car, but otherwise poses no threat to the officer, it is legally acceptable to strike that individual in the forehead twice with sufficient force to cause a contusion, and then when that individual flees from the assault, to throw the person to the ground, shove his head against the ground, and force his hands behind his back in such a way as to injure his shoulder").

**Deputy Hill**.  Deputy Hill similarly must be extended qualified immunity.  Even if application of the relevant factors established by controlling precedent, viewed in the light most favorable to Redding, compels the conclusion that the force exerted by Hill was not objectively reasonable, this court cannot say that a reasonable officer would have known that the use of serious but non-deadly force on a resisting but non-threatening arrestee would violate the Fourth Amendment. See Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006) ("Qualified immunity protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines.") (internal quotation marks & citation omitted).  The parties have not identified, and this court has been unable to find, case law clearly establishing in 2007 that such force could not constitutionally be used to effect an arrest of a suspect who resists arrest throughout her entire encounter with law enforcement, even if the suspect does not pose an immediate safety

threat and is suspected of a minor offense. In fact, subsequent non-binding case law from within the Fourth Circuit suggests the contrary. Cf. Bolden v. Rushing, C/A No. 6:07-cv-2985-GRA, 2009 WL 1160938 (D.S.C. Apr. 28, 2009) (finding, two years after the events at issue here, no Fourth Amendment violation when officers conducted a traffic stop and, learning of an outstanding warrant for the individual whose name the plaintiff used, employed a taser following a warning when the plaintiff did not fight against the officers but nonetheless would not allow the officers to handcuff him and where use of the taser caused the plaintiff to fall and break his ankle), aff'd, 407 Fed. Appx. 693 (4th Cir. Jan. 14, 2011).

**D.     State Law Claims**

In light of the fact that all the defendants are entitled immunity with regard to the federal claims for which the court has original jurisdiction, the court should decline to exercise supplemental jurisdiction over Redding's state law claims. See 28 U.S.C. § 1367(c).

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the defendants' motions (ECF Nos. 50, 51, & 56) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 9, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).